MATTER OF CHUNG

In Visa Petition Proceedings

A-20017899

*Decided by Board August 19, 1974*

Beneficiary, born in Korea in 1957, and orphaned at a young age, was taken into the family of the petitioner's husband. Petitioner's registration of beneficiary's birth in the Korean Family Register in 1968 as the natural child of petitioner and her husband, without any formal adoption proceedings, did not create a valid adoptive relationship under Korean law. Accordingly, beneficiary cannot qualify as an adopted daughter of the lawful permanent resident petitioner and is ineligible for preference classification under section 203(a)(2) of the Immigration and Nationality Act, as amended. [*Matter of Chong*, 13 I. & N. Dec. 45, overruled, to the extent inconsistent with this decision.]

The petitioner is an alien lawfully admitted for permanent residence who sought preference status for the beneficiary as an unmarried adopted daughter under section 203(a)(2) of the Immigration and Nationality Act. In a decision dated February 19, 1971, the district director approved the petition, but certified the case to us for review. The decision of the District Director will be reversed.

The petitioner, the petitioner's husband, and the beneficiary are natives and citizens of the Republic of Korea. The record indicates that the beneficiary was born in July of 1957, was orphaned at a young age, and was taken into the family of the petitioner's husband. Several years after her marriage into the family in which the beneficiary resided, the petitioner registered the beneficiary under Korean law as the natural child of her husband and herself. The petitioner and her husband, however, did not attempt formally to adopt the beneficiary, evidently because of their belief that a female child could not be adopted under Korean law.

The question presented in this case is whether the registration of the beneficiary as the natural child of both the petitioner and the petitioner's husband created a valid adoptive relationship in Korea. In *Matter of Chong*, 13 I. & N. Dec. 45 (BIA 1968), we were presented with a similar question. In *Chong*, the petitioner's husband had fathered a child who was born out of wedlock. After the mother of the child died, the petitioner and her husband registered the child as *their* natural child. We determined that this registration was sufficient to constitute an

62

adoption under Korean law. Our decision in *Chong*, however, appears questionable in the light of new information which we have received from the Far Eastern Law Division of the Library of Congress.[1]

This petitioner registered the beneficiary's birth in 1968. However, as indicated in the attached memorandum of foreign law, the Supreme Court of Korea held in 1967 that notification or registration of the birth of a child cannot replace registration of adoption. Accordingly, since the record does not indicate that any formal adoption proceedings were undertaken in Korea, the beneficiary does not qualify as the adopted daughter of the petitioner. The decision of the district director was incorrect.

Although *Matter of Chong, supra,* is distinguishable on its facts from this case, the underlying legal analysis cannot be distinguished. Accordingly, *Matter of Chong* is overruled to the extent that it is inconsistent with this opinion.

ORDER: The decision of the district director is reversed and the approval of the visa petition is withdrawn.

### ADDENDUM

#### ADOPTION OF AN ORPHAN IN A PRIVATE HOME UNDER THE LAW OF THE REPUBLIC OF KOREA

In a case involving the adoption of an infant whose birth had not been registered by its natural parents, the Supreme Court of the Republic of Korea held in 1947 that "if the adoptive father gives notification of the birth stating that the (adoptive) child is his legitimate child and that of his wife, it is reasonably construed that the adoptive relation arises therefrom, provided that other substantive requirements of adoption are met." [1] In a similar case, the Supreme Court held in 1967, however, that "the notification of adoption . . . cannot be replaced by the notification of birth which states that the child of another (adoptive child) is a legitimate child of the adopting parents . . . and that the status of adopted child would not result from such notification of birth." [2]

Agreeing with the 1947 decision, Professor Kim elaborated on the subject in a 1969 publication as follows:

> In Korea there are many cases in which the foster parents give notification of birth, stating that the child is their own child, although they wish to effect an adoption. This is motivated by two considerations: their love toward a child who was brought to their

---

[1] The full text of the pertinent memorandum of foreign law is attached as an addendum to this opinion.

[1] Supreme Court decision, November 25, 1947; *P'anre ch'ongnan* [Collection of Cases] (Seoul: Ch'ŏngrimgak, 1966), p. 186.

[2] This 1967 decision was reported in the 1971 edition of the above *Collection of Cases* which was received by the Library of Congress in 1972. See p. 186–186.1.

home at an infant age and their desire to regard him as their legitimate child in a family register. Due sympathy and certain remedy should be accorded to such foster parents' feelings. Although the relationship of legitimated child would not result from such registration, it should be construed that the child acquires the status of adopted child thereby.[3]

Nowhere did Korean statutes, the Supreme Court decisions or Professor Kim's statement mention the adoption of an orphan in such a manner. However, Professor Chung Kwang-hyon, the foremost authority on Korean family law, was of the opinion that Professor Kim's statement should be broadly interpreted to include foster parents' adoption of an orphan whose birth had not been registered.[4] According to Professor Chung, if the foster parents give notification of birth, stating that the orphan child is their own child, it should be reasonably construed that such child acquires the status of adopted child in view of the public policy of protecting an orphan's well-being. For this reason, he disagreed with the 1967 decision.

---

[3] Kim Chu-su, *Chusok ch'inzok sangsokpŏp* [Article by Article Commentary on the Law of Relatives and Succession] (Seoul: Pŏpmunsa, 1969), p. 409. Professor Kim failed to mention the 1967 decision in his book.

[4] Dr. Chung is retired and now lives in the United States. He expressed his opinion in a letter addressed to me on May 11, 1973, and in the subsequent meeting on May 13, 1973.

Prepared by
Sung Yoon Cho
Senior Legal Specialist
Far Eastern Law Division
Law Library, Library of Congress
Washington, DC 20540
July 1974